## IRWIN-BALLMANN CO v REESE

Ohio Appeals, 1st Dist, Hamilton Co

No 4910.   Decided Jan 6, 1936

Froome Morris, Cincinnati, and August J. Knapp, Cincinnati, for plaintiff in error.

Yarwood & Hoy, Cincinnati, for defendant in error.

## OPINION

**By THE COURT**

This proceeding brings under review a judgment rendered in the Court of Common Pleas of Hamilton County in favor of the plaintiff, Ned Reese, against the defendant, The Irwin-Ballmann Company. The parties will be identified in this opinion by their respective titles in the trial court.

In the plaintiff's amended petition, he alleged that the defendant was a corporation doing a stock brokerage business; that he had been one of its customers for about ten years prior to the transaction upon

which he predicated his action, that the defendant had executed many verbal orders for him during said time; and that on January 28th, 1932, the defendant was representing him in relation to six hundred and thirty-five shares of stock of The Procter & Gamble Company which he had purchaser through the defendant, and which stock together with bonds of the par value of thirteen thousand dollars at that time, was pledged to secure three demand notes aggregating twenty-five thousand, four hundred ($25,400.00) Dollars, given by him to defendant to secure the unpaid balance of the purchase price.

The plaintiff then alleged that on February 7th, 1932, he ordered defendant to transfer to J. S. Bache & Company, 42 Broadway, New York City, his entire account, i.e., his demand notes, with the aforesaid collateral; that Bache & Company on February 9th, 1932, agreed to accept his account, and on February 12th, 1932, he placed a stop-loss order with Bache & Company to sell the Procter & Gamble Company stock should it decline in market value to thirty-eight dollars per share.

The plaintiff also alleged that the defendant accepted said order to transfer and promised to carry it out immediately. The plaintiff then alleged that the defendant neglected and refused to transfer his account as ordered until May 2nd, 1932, that said stock could not be sold by Bache & Company until said transfer was made to them and that when such transfer was made the market value had declined, so that when it was sold by Bache & Company on May 5th, 1932, he suffered a loss of $7089.78, which he would not have suffered had the transfer been made when he originally ordered it made so that Bache & Company could have executed his stop-loss order at $38.00 per share.

The defendant admitted that it was a corporation engaged in doing business as a stockbroker, in buying, selling and dealing in securities, negotiating and securing loans and matters incidental thereto. The defendant also admitted that on January 28th, 1932, the plaintiff's account was as alleged by him, that on or about May 1st, 1932, upon receipt of an order from the plaintiff to transfer his account to Bache & Company, confirmation of Bache & Company's willingness to accept the account and payment of $995.41 due to the defendant from the plaintiff, the defendant did transfer the account to Bache & Company.

The defendant denied all other allegations.

The case was tried to a jury. It appears from the evidence that about January 28th, 1932, the plaintiff became concerned about the state of the stock market and desired to make an arrangement whereby his stock would be sold if the market price dropped to $38.00 per share. In the language of the trade, he desired to place with his broker a stop-loss order at that price. He attempted to make such an arrangement with the defendant, but it declined to accept it, stating that it never executed stop-loss orders. The reason given at the trial by the defendant was that it did not carry stocks on margin, but only executed orders to buy or sell, and when the buyer desired credit, took his note with the stock or other security as collateral and, acting as his agent, endeavored to find some one to whom to negotiate it, and that was what was done for the plaintiff, and as the notes were demand notes giving the holder the power to sell without notice or demand, it did not have control of the stock and, therefore, could not accept stop-loss orders. While the plaintiff at certain points in his testimony disclaimed knowledge of how the defendant financed his transactions, it is quite clear that he knew the method, but may not have known much of the time to whom his notes had been negotiated. As we view the case, the distinction between a margin arrangement and the defendant's method is not material in this case.

The plaintiff, not being able to make this stop-loss order arrangement with the defendant, took the matter up through his son with Bache & Company's agent at New Haven, Conn. The son was dealing with Bache & Company at their New Haven office, and the proposal made by him was that Bache & Company should accept the plaintiff's account and merge it with his account. While it appears from the evidence that the New Haven agent of Bache & Company was willing to do this early in February, 1932, it is quite clear the main or New York office of Bache & Company had not committed itself as late as February 17th, 1932, and it is at least doubtful whether there was any commitment before the actual transfer was made on May 2nd, 1932.

There is a conflict in the evidence as to whether the plaintiff notified defendant to transfer the account prior to April 30th, 1932, on which date he delivered to it a written request specifically requesting the transfer to J. S. Bache & Company of 42 Broadway, New York City, "without pre-

judice to any claims I have against you."

During all the time from January to April 23rd, 1932, the plaintiff was indebted to the defendant for commissions for services rendered and interest advanced for plaintiff to the holders of his notes. And he owed $25,400.00 to the holders of the notes.

The plaintiff paid $995.41 on the 23rd day of April, 1932. At no time did he pay the notes or tender payment of them.

There was a great deal of evidence introduced explanatory of the methods of stock brokers and on the subject of market quotations on the stock. What has been said, we think, is sufficient for the purpose of deciding the issues involved.

Before considering the specific errors assigned. it will be enlightening to consider just what the relation was between these parties.

The trial court in the charge very properly said that this was an action for breach of contract. That being true, what were the terms of that contract? On the part of the defendant, the contract bound it to execute with fidelity and reasonable dispatch under the circumstances such orders of purchase and sale as the plaintiff might give to it and it accepted, so long as the relation of broker and customer continued; also to exercise good faith and reasonable care in negotiating his demand notes with the collateral attached; also to make full and complete disclosure of all transactions executed on his behalf, and upon termination of the agency to account fully and upon payment of any balance due it to deliver to him whatever property it had belonging to him, and, of course, in its negotiations for the termination of the relation, not to mislead the customer to his damage by any false statement or promise;

On the other hand, the plaintiff was obliged to pay his demand notes to the holder or holders thereof, and to the defendant the compensation agreed upon and any money advanced by it for him.

There was no agreement as to the duration of the relation and it was therefore terminable at the will of either party.

The defendant was under no obligation to pay the plaintiff's demand notes or to advance to him the money for that purpose.

When the plaintiff notified the defendant to transfer his account to J. S. Bache & Company, he was actually attempting to terminate the relation existing between them, and, of course, was required to perform the things incumbent upon him to be performed before the defendant could be placed in default. He was required to

pay the commissions and interest due the defendant, and, before he could insist upon the delivery of his securities to him or to any one designated by him, it was necessary that those holding his demand notes should be satisfied so that they would release these securities held by them as collateral. This was not an instance in which the plaintiff was relying upon the defendant to obtain a purchaser for his demand notes with his collateral attached. The plaintiff had assumed to find a purchaser in order to terminate the relation under which he could look to the defendant to do that. In the process of terminating an agency the principal necessarily and in law acts for and on behalf of himself, and the agent for and on behalf of himself in asserting their respective rights growing out of the agency relation.

The record shows that the plaintiff at no time tendered the amount of these demand notes to either the defendant or to the holders. It was not within the power of the defendant to obtain these notes and the collateral except by paying the amount of the notes, and this it was under no obligation to do. As soon as it was furnished with the money, it immediately paid the notes, secured the collateral and delivered the collateral to the plaintiff's agent.

The defendant was under no obligation to seek out its own successor, as the plaintiff's broker. It was incumbent upon the plaintiff or the successor as his agent to make demand upon and tender to the defendant, and seek it for that purpose.

These are fundamental rules of contract, and in the absence of an agreement enlarging or changing them, control the rights of the parties.

The court charged the jury that:

"Ordinarily it was the duty of the defendants, as brokers, for the plaintiff, to carry out all orders for the plaintiff which pertained to the business of the plaintiff which was under the control and in charge of the defendant, and if the order to transfer the account of the plaintiff to Bache & Company was received at the time or times alleged by the plaintiff in his petition, and the defendant failed to carry out said order or orders, the defendant would be liable for any loss that the plaintiff suffered by reason of the defendant's failure or neglect to carry out said order, unless the plaintiff himself had to do something further in order to make said order effective. If nothing remained for the plaintiff to do but to give the order, the plaintiff would be entitled to recover whatever damages he suf-

fered by reason of the failure of the defendant to carry out said order; but if you find said order was given, and at the time of the giving of said order there was an indebtedness for interest, principal or charges due the defendant from the plaintiff over and above the amount due the defendant, when said stock, notes and securities were in the hands of the defendant on January 28, 1932, and said stock, notes and securities were not sufficient to discharge all said indebtedness due the defendant from plaintiff, then the defendant would not be liable to plaintiff for failure to carry out said order or orders, * * *."

While this charge did not state the issues with sufficient clarity, it did refer to the contingency of the failure of the plaintiff to perform some duty, constituting a condition precedent. It is clear from the evidence that there was a condition precedent—payment of indebtedness—and that the plaintiff failed to perform it, unless he was excused from performing it by reason of the specific agreement alleged by him. The quoted portion of the court's charge makes the question of indebtedness depend on whether the securities were equal in value to the amount of the indebtedness. That is an error. Whether the indebtedness was sufficiently or insufficiently secured would have nothing to do with the existence or amount of the debt. This error undoubtedly misled the jury.

The plaintiff alleged that the defendant promised to transfer his account to Bache & Company. The only evidence in support of that allegation is the testimony of the plaintiff that he gave the order and that the defendant's agent said: "He would transfer the account to J. S. Bache & Co." We are left completely in the dark as to what this meant in terms of performance under the circumstances. To accomplish this transfer, many things had to be done, and some of them at least required the cooperation of the plaintiff. With the bare statement that the defendant agreed to transfer the account, the jury could only speculate as to what it was required to do to effectuate such transfer.

We are unanimously of the opinion that a verdict based on this meager evidence is manifestly against the weight of the evidence. In the opinion of a majority of the court the record in this respect requires that the cause be remanded for a new trial.

In passing we should say that the time of breach, if any. would be determined by what a reasonable time would be to make the transfer, under all the circumstances, in the absence of any specific agreement on the subject.

We find no other errors of a substantial nature, prejudicial to the defendant, plaintiff in error.

For these reasons, the judgment of the Court of Common Pleas is reversed and the cause remanded to that court for further proceedings in accordance with this opinion.

ROSS, PJ, MATTHEWS and HAMILTON, JJ, concur.